**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DEYVIN JOSUE MENESES-ZELEDON,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, *Pike County Correctional Facility*,<br><br>Respondent. | No. 4:26-CV-01376<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**AUGUST 31, 2026**

## I. BACKGROUND

Deyvin Josue Meneses-Zeledon ("Petitioner"), currently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), entered the United States of America in July of 2022, was arrested by ICE during a check-in appointment on April 20, 2026, and has remained in custody since that date.[1] Petitioner filed a 28 U.S.C. § 2241 petition seeking his release from ICE custody,[2] and the Court granted his first petition, ordering Respondent to either release Petitioner or to conduct an individualized bond

---

1 Doc. 6-2 at 2-3

2 Doc. 1.

hearing.[3] The Court clarified that the reasons for any denial of bond must be explained in detail beyond simply stating that Petitioner was a danger or flight risk.[4]

Petitioner's bond hearing was held on June 8, 2026, in front of an Immigration Judge ("IJ").[5] Petitioner was not represented by counsel and Petitioner submitted no documents.[6] The IJ proceeded to ask Petitioner a series of questions about his circumstances, including inquiries into Petitioner's prior criminal history, Petitioner's family, and Petitioner's residence and work history.[7] Petitioner did not have any prior arrests.[8] Petitioner's family included his wife and children, who were also seeking applications for legal status, and other "cousins" about which no evidence was provided.[9] Petitioner had been living in California upon his arrival in the United States, but moved to New Jersey the same year he arrived.[10] Petitioner occasionally visited his family in Ohio and Indiana for six-month increments due to lack of employment opportunities in New Jersey.[11] Petitioner has his work permit and worked at various jobs in New Jersey, Ohio, and Indiana.[12]

---

[3] Docs. 7-8.
[4] Doc. 8.
[5] Doc. 10 at 1-2.
[6] *Id.*; Doc. 12-3 at 2-3.
[7] Doc. 12-3 at 4-5.
[8] *Id.* at 4.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 4-5.

The IJ denied bond, finding that Petitioner had not proven that he was not a flight risk.[13] The IJ noted that he had examined Petitioner's case file and explained that his decision was motivated by Petitioner's "recent" 2022 illegal entry, Petitioner's lack of fixed address, and Petitioner's lack of fixed employment.[14]

Following the hearing, Petitioner submitted the instant *pro se* motion to enforce the Court's prior Order, asserting that the June 8 hearing was insufficiently individualized and improperly placed the burden on Petitioner.[15] Petitioner argues that the bond hearing therefore violated the Court's prior Order and due process and seeks release as a remedy.[16] In opposition to the instant motion, Respondent provided an unverified transcript of the June 8 bond hearing.[17]

## II. LAW

### A. Jurisdiction

Respondent first argues that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[18] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[19]

---

13 *Id.* at 5-6.
14 Doc. 12-3 at 5-6.
15 Doc. 11 at 1-3.
16 *Id.* at 2.
17 Doc. 12-3.
18 Doc. 12 at 4.
19 8 U.S.C. § 1126(e).

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[20] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[21]

Additionally, beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[22] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[23]

Here, Petitioner asserts that the bond hearing did not provide Petitioner with due process nor comport with the Court's prior Order because it failed to sufficiently consider Petitioner's individual circumstances and instead relied on "boilerplate" conclusions.[24] Petitioner also asserts that the bond hearing placed the burden

---

20 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

21 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

22 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

23 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

24 Doc. 11 at 2.

incorrectly on Petitioner and therefore deprived Petitioner of due process of law.[25] These arguments are excepted from § 1226(e)'s bar on review of bond determinations, as the Court is not divested of jurisdiction to consider whether the bond hearing complied with the Court's own order and whether it was fundamentally fair.[26] Therefore, Respondent's jurisdictional arguments fail.

Respondent additionally asserts that Petitioner has failed to exhaust his administrative remedies related to the bond hearing, and that, therefore, this Court should decline to review the motion.[27] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[28]

The Court need not determine whether exhaustion of administrative remedies is required in this matter because, even when exhaustion is necessary, courts will not enforce that requirement if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable

25 *Id.*
26 *See Ghanem*, 2022 WL 574624, at *2.
27 Doc. 12 at 6-9.
28 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

harm."[29] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[30]

Additionally, to the extent that Petitioner would be required to exhaust administrative remedies, such exhaustion would not apply to this Court's review of its own order when determining if Respondent complied therewith. Accordingly, the Court has jurisdiction to consider Petitioner's motion.

### B. Merits

Turning to the merits of Petitioner's motion, Petitioner argues that his bond hearing was deficient by failing to sufficiently consider Petitioner's individual circumstances and by placing the burden on Petitioner to show that he was a risk of neither danger nor flight.[31] Respondent asserts that the IJ sufficiently considered Petitioner's circumstances and that the proceeding was not procedurally deficient.[32]

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[33] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[34] "This

---

29 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).
30 *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).
31 Doc. 11 at 2.
32 Doc. 12 at 9-14.
33 *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
34 *Id.* (internal quotation marks omitted).

guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[35] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[36]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[37] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[38] "However, to the extent that Petitioner challenges how the IJ weighed the evidence presented, such an argument "challenges a discretionary determination" that the Court may not review.[39]

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed

---

35 *Id.* (brackets and internal quotation marks omitted).
36 *Id.* (internal quotation marks omitted).
37 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F. 3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).
38 *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).
39 *Ghanem*, 2022 WL 574624, at *2.

to prevent him from fleeing or harming the community."[40] "'Mechanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice.'"[41] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including whether the alien has a fixed address in the United States, the alien's family ties in the United States, and the alien's employment history.[42]

Here, Petitioner's hearing was sufficiently individualized to comport with due process and this Court's prior Order. First, Petitioner contends the burden of proof was improperly placed on him instead of the government;[43] such an argument is

---

40 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

41 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

42 *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit has held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors may be considered by the IJ. *See, e.g., Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026); *Dia v. Mullin*, No. 4:26-CV-01418, 2026 WL 1708513, at *5 n.54 (M.D. Pa. June 12, 2026) (Brann, J.).

43 Doc. 11 at 2.

unavailing. As I held in my prior Memorandum Opinion, the relevant statute for Petitioner's detention is § 1226(a), the permissive detention statute, and therefore the burden under § 1226(c) is simply irrelevant here.[44] The law is clear that, in a bond hearing under § 1226(a), "the burden remains on the detainee at all times."[45] Accordingly, the Court cannot conclude that the IJ erroneously held that Petitioner bore the burden of proof.

Moreover, from the submitted transcript, it appears that the hearing was not so deficient as to be fundamentally unfair or to deprive Petitioner of an individualized hearing.[46] While Petitioner was not represented by counsel, the IJ explained the process to Petitioner and asked questions of Petitioner that were tailored to produce information relevant to determining if he was a flight risk or danger.[47] The IJ followed up on Petitioner's answers, asking about his residence duration and locations and work history, and gave Petitioner the opportunity to present argument and evidence on his behalf.[48] Therefore, the hearing was not procedurally deficient.

Moreover, the IJ examined the specific submissions before him and came to a determination that appears to have been individualized to Petitioner. In his

---

44 Doc. 7 at 6.

45 *See Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d Cir. 2018); *but see Zheng*, 826 F. Supp. 3d at 561 (noting that some courts have found that the burden may shift to the Government after detention has become prolonged and unreasonable).

46 Doc. 12-3 at 2-6.

47 *Id.* at 1-3.

48 *Id.* at 4-5.

decision, the IJ articulated his basis for denial on the record, namely finding that Petitioner had not met his burden to show that he was not a flight risk due to lacking a fixed residence and employment.[49] Both of these considerations are facially valid factors that IJs may consider when determining flight risk.[50] Accordingly, Petitioner's hearing was both sufficiently individualized and fair as to comport with this Court's prior Order and due process.[51]

While the Court may disagree with the IJ's ultimate determination, such is not the question before the Court today.[52] Instead, for the instant motion, the Court may only determine whether Petitioner received a sufficiently individualized bond

---

49 Doc. 12-3 at 4-6.

50 *See supra*, note 46.

51 *Compare Zheng*, 826 F. Supp. 3d at 560 (due process violation found where the IJ stated only the conclusion that the petitioner was a flight risk "without any reasoning or reference to facts in the record"), *and Rodriguez v. Greene*, 4:26-CV-0333, 2026 WL 574961, at *12 (N.D. Ohio Mar. 2, 2026) (where the IJ's decision "contain[ed] zero reference to any record or arguments put forth by either party" and did not provide due process) *with De Souza v. Soto*, No. 25-18734, 2026 WL 102946, at *3 (D.N.J. Jan. 14, 2026) (a proceeding was fundamentally fair where the IJ considered the petitioner's lack of evidence of employment and fixed address), *Avilov*, 2026 WL 1947617, at *3 n.2 (finding a bond hearing satisfactory where the IJ "heard argument, asked questions, considered [petitioner's case], addressed both negative and positive factors, and stated a reason for denying bond"), *Rodriguez v. Bondi*, 3:26-CV-285, 2026 WL 1378874, at *2 (W.D. Pa. May 18, 2026) (finding a fair hearing where "the IJ explained his reasons for denying bond"), *Kamara v. Doll*, No. 1:17-CV-01176, 2017 WL 6497362, at *4 (M.D. Pa. Dec. 19, 2017) (noting that the IJ acknowledged several facts specific to the petitioner and that, "[w]hile Petitioner may be dissatisfied his individualized assessment, it cannot be said that the immigration judge did not follow the law of the case[ ]as prescribed by this [C]ourt and conduct an individualized bond hearing") (internal quotation omitted) *and Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78 (3d Cir. 2019) (due process requirements were satisfied by a hearing where the IJ "considered specific details" of the petitioner's case) (affirming Brann, J.).

52 *Ghanem*, 2022 WL 574624, at *3 ("[J]ust because there are disagreements about the outcome of the bond hearing . . . does not mean that the IJ violated due process in conducting the bond hearing.").

hearing to comply with the Court's prior Order and fundamental notions of fairness. Having so found that Petitioner's hearing was individualized to Petitioner's submissions and was not fundamentally unfair, Petitioner's motion to compel is denied.

## III. CONCLUSION

Petitioner's motion to enforce the Court's prior Order is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge